# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***People v. Coleman*, 2012 IL App (4th) 110463**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CASSIAN T. COLEMAN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0463 |
| Filed | December 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary dismissal of defendant's postconviction petition as "frivolous and patently without merit" was reversed and the cause was remanded, since the petition raised arguable claims of ineffective assistance of counsel and a violation of due process under *Brady* based on the State's failure to disclose that the contents of 15 bags of suspected cocaine seized from defendant were commingled into one bag until after defendant's counsel stipulated that the commingled bag contained cocaine. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 06-CF-448; the Hon. Katherine M. McCarthy, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Allen H. Andrews, all of Office of State Appellate Defender, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Robert Biderman, and John E. Teefey, all of State's Attorneys Appellate Prosecutor's Office, of counsel) for the People.

Panel

JUSTICE APPLETON delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Pope concurred in the judgment and opinion.

# OPINION

¶ 1    Defendant, Cassian T. Coleman, who is serving a sentence of 25 years' imprisonment for unlawful delivery of a controlled substance (720 ILCS 570/401(a)(2)(D) (West 2006)), appeals from the summary dismissal of his petition for postconviction relief. See 725 ILCS 5/122-2.1(a)(2) (West 2010). In our *de novo* review (*People v. Brown*, 236 Ill. 2d 175, 184 (2010)), we do not find the petition to be based entirely on "indisputably meritless legal theor[ies] or *** fanciful factual allegation[s]" (*People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). Therefore, we reverse the trial court's judgment and remand this case for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3                          A. The Trial and the Sentence

¶ 4    In the jury trial in September 2007, the State adduced the following evidence. Zundra Cotton lived in Decatur with Genaro Hendrix, a cocaine dealer. On March 22, 2006, the police raided their house. Defendant was standing on the steps of the front porch, and they arrested him. They searched his person and found that he had a key to the front door of the house.

¶ 5    Cotton's purse was on the kitchen table, and inside her purse were 15 bags of white powder. Also, two black plastic bags were crumpled up on the table, beside the purse, and inside these bags was a clear plastic wrapper. Such materials commonly were used to package kilograms of cocaine.

¶ 6    Defendant's fingerprints were on the two black plastic bags beside the purse. Cotton testified that defendant was Hendrix's supplier and that, earlier in the morning on the day of the raid, defendant brought over a package of cocaine and that she helped him break it up and put it in the 15 bags that the police subsequently found in her purse.

-2-

¶ 7    The parties entered into the following stipulation:

"(1) That Dan Ashenfelter is a Police Officer for the City of Decatur and is assigned as Evidence Officer for the department.

That on March 30th, 2006, he retrieved People's Exhibit[ ] [No.] *** 2 *** from the evidence locker at the Decatur Police Department. That members of the public are not allowed access to the evidence locker. *** People's Exhibit [No.] *** 2 *** [was] then in a sealed condition.

That on that date[,] Dan Ashenfelter transported and delivered People's Exhibit [No.] *** 2 *** to the Illinois State Police Crime Lab in Springfield, Illinois. *** Ashenfelter made no changes or alterations to the exhibit[ ] and did not tamper with the contents of the exhibit[ ] in any way.

*** People's Exhibit[ ] [No.] *** 2 *** [is] now in the same or substantially the same condition as [it was] on March 30th, 2006.

* * *

(4) That Michael Cravens was employed as a Forensic Scientist with the Illinois State Police Crime Lab in Springfield ***. [He] is qualified as an expert witness in the identification of controlled substances.

That on March 30th, 2006, he received People's Exhibit [No.] 2 *** from Dan Ashenfelter at the Crime Lab. *** People's Exhibit [No.] 2 *** [was] then in a sealed condition[,] and the exhibit[ ] [is] now in the same or substantially the same condition as when he received [it].

That he subsequently performed tests on People's Exhibit [No.] 2 ***. *** *[B]ased upon the tests he performed [and] his expertise[,] Michael Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's Exhibit [No.] 2 was 926.0 grams of cocaine.*" (Emphasis added.)

¶ 8    Immediately after reading that stipulation to the jury, the State called David Dailey, a detective with the Decatur police. Dailey testified that on March 22, 2006, he helped execute the search warrant at the house where Cotton and Hendrix lived. At the scene, he weighed the 15 bags from the purse. Nine of the bags weighed 63 grams apiece, and the other six bags weighed 64 grams apiece. He field-tested only 1 of the 15 bags: it tested positively for cocaine. Then he emptied the 15 bags into a larger evidence bag, People's exhibit No. 2; sealed it; and took it to the evidence vault.

¶ 9    After Dailey's testimony, the State rested, and outside the presence of the jury, the prosecutor, Jay Scott, offered exhibits in evidence. Defense counsel, Scott Rueter, objected to the proposed admission of People's exhibit No. 2, and at the same time, he moved for a directed verdict. Rueter argued that because Dailey commingled the contents of the 15 bags at the scene and because the crime laboratory consequently could not have tested the contents of each bag separately for the presence of cocaine, the State had failed to "establish[ ] a prima facie case with respect to the 962 grams of cocaine." Rueter argued: "We haven't had any testimony that, and I know the lab can do this, we haven't had any testimony that's [*sic*] it's 95 percent pure cocaine, or if it's, you know, 12 percent pure cocaine. There's nothing

to show that what the officer did didn't compromise the amount of weight involved here."

¶ 10 Scott offered a twofold response. First, he suggested that Rueter's argument was implausible, considering the "empty kilo wrapper" that police officers found on the kitchen table and Cotton's testimony that she had helped defendant break up the "kilo" (1,000 grams) into the 15 bags, which, in fact, cumulatively weighed almost a kilogram (926 grams). Scott argued: "I think it's kind of throwing common sense out the window to think that their [*sic*] weighing, bagging up some other substance." Second, Scott reminded the trial court of the stipulation. He said: "We have a stipulation that this is 926 grams of cocaine and now to turnaround [*sic*] at the end and say it's not 926 grams of cocaine I don't think that's really being fair in this case by the defense."

¶ 11 Rueter replied: "You know at trials we try and prepare for and do our best and sometimes the evidence comes in different than we expect. *** I think based upon the evidence as it now stands we have compromised evidence."

¶ 12 After hearing these arguments and counterarguments, the trial court overruled defense counsel's objection to People's exhibit No. 2 and admitted the exhibit in evidence.

¶ 13 The jury returned, and the defense presented its case, followed by rebuttal evidence from the State. Then it was time to make closing arguments to the jury.

¶ 14 Before closing arguments, outside the jury's presence, Scott made an oral motion to bar the defense from suggesting to the jury that People's exhibit No. 2 was "not necessar[ily]" 926 grams of cocaine. Scott explained to the trial court that, before trial, he and Rueter agreed to stipulate that People's exhibit No. 2 was 926 grams of cocaine and that the State had relied on that stipulation in the presentation of its case. Scott "underst[oo]d how things come up," but he believed it would be unfair to the State to allow the defense now to contradict the stipulation. At this late stage of the trial, he would be "kind of hamstrung" because, in the trial, he relied on the stipulation and did not "have the witness come into [*sic*] testify."

¶ 15 Rueter insisted, "I'm still sticking with the stipulation"–but he nevertheless wanted to argue to the jury that there was reasonable doubt as to the weight of the cocaine. He told the trial court: "But I think in all fairness too, given how the evidence has come in to establish as we have that the officer was the one who mixed the individual bags and we don't know–I mean, it's the same as if the officer had taken a bag of talcum powder and a bag of cocaine[ ] that weighs 10 grams and mixed it together." It was impossible to tell if the one bag had been cocaine (or a substance containing cocaine) and the other 14 bags had been merely a cutting agent.

¶ 16 The trial court decided: "Based on [the] stipulation, I will not allow this defendant to argue that People's Exhibit [No.] 2 is anything less than 926 grams of cocaine."

¶ 17 Rueter replied: "I'm not gonna argue that Exhibit Number 2 is less than 926 grams of cocaine. But I do intend to argue about the possibility that the officers[ ] are the one[s] that made it that weight by combining those items." One of the bags, Rueter admitted, "probably [was] cocaine because of the field test," but the weight of that individual bag was 64 grams at the most. Dailey did not field test the other 14 bags before dumping the contents of all the bags into a single container, and those 14 bags "could have been inositol or baking powder."

-4-

Dailey "raised that amount to over 900 grams by commingling those amounts without keeping them separate for identification and without performing a field test."

¶ 18    In response, Scott pointed out, first of all, that "a field test [was] not evidence proving what a substance [was]"; a field test was merely "preliminary." Anyway, more to the point, if, instead of entering into the stipulation, the defense had taken the position, from the beginning, that the separate contents of each of the bags were unproved by chemical analysis, the State then could have called a witness to testify whether "there was a very small amount of cocaine." Instead of calling such a witness, the State had relied on the stipulation. Scott said: "I mean that would have been something we could have gone through with[ ] a chemist to show that this wasn't, you know, it wasn't 1/15th cocaine and the rest of it was talcum powder."

¶ 19    The trial court again agreed with the State and forbade the defense to argue to the jury that People's exhibit No. 2 might not be 926 grams of cocaine.

¶ 20    Counsel made their closing arguments. The jury found defendant guilty. The trial court sentenced him to 25 years' imprisonment. He took a direct appeal.

¶ 21                          B. The Direct Appeal

¶ 22    In his direct appeal, defendant argued the trial court had erred by admitting People's exhibit No. 2 into evidence, because, according to the evidence, Dailey had tampered with, or altered, this exhibit by dumping the contents of all 15 bags into a single container and consequently the crime laboratory had been unable to separately test the contents of each bag. *People v. Coleman*, 391 Ill. App. 3d 963, 970 (2009). Defendant argued that the State had failed to rebut this evidence of tampering, making the chain of custody insufficient. *Id.*

¶ 23    We acknowledged that because the punishment for possession of a controlled substance depended on how much of *a substance containing a controlled substance* the defendant possessed, commingling a controlled substance with a legal substance could have significant penal implications. *Id.* at 972-73. (Actually, defendant was convicted of *delivering* a controlled substance, but this distinction makes no difference.) We concluded, however, that, for purposes of the trial, the stipulation had eliminated the possibility that the substances in any of the untested bags were entirely legal substances, such as baking powder. We explained:

> "[W]hether Dailey 'tampered with,' or 'altered,' the evidence depends on whether all 15 bags contained cocaine before he emptied them into one evidence bag. Initially, there were 15 physically separate substances. Were all 15 substances cocaine or a substance containing cocaine? Defense counsel stipulated as follows: '[B]ased upon the tests he performed [and] his expertise[,] Michael Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's [e]xhibit [No.] 2 was 926.0 grams of cocaine.' Like the trial court, we take that stipulation at face value. ***
>
>     *** [D]efendant failed to carry his burden of producing evidence of actual tampering, alteration, or substitution. Mixing the 15 quantities of cocaine together did not change the substance so as to increase criminal liability: it always was, and remained, cocaine

[according to the stipulation]. Therefore, we find a sufficient chain of custody." *Id.* at 973-74.

¶ 24 On direct appeal, defendant made another argument as an alternative to his challenge to the chain of custody: he argued that his trial counsel had rendered ineffective assistance by stipulating that, " 'based on the tests he performed ***[,] Michael Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's exhibit [No.] 2 was 926.0 grams of cocaine.' " *Id.* at 974. We declined to consider the merits of that claim of ineffective assistance, because we thought a postconviction proceeding would be the best forum in which to address that claim. *Id.* at 975. So, we affirmed the conviction. *Id.* at 985. The supreme court denied leave to appeal. *People v. Coleman*, 234 Ill. 2d 530 (2009).

¶ 25                                    C. The Postconviction Proceeding in Trial Court

¶ 26 On August 20, 2010, an attorney, James Dedman, filed a postconviction petition on defendant's behalf. The petition asserted three constitutional violations: (1) Rueter rendered ineffective assistance by entering into the stipulation regarding People's exhibit No. 2; (2) Rueter rendered ineffective assistance by failing to call Genaro Hendrix and Jimmy Lester to testify for the defense; and (3) the State failed to make a pretrial disclosure of information favorable to the defense, namely, Dailey's mixing the substances from the 15 bags together without having the substances in each of the bags tested separately.

¶ 27 In support of the postconviction petition, Dedman submitted a copy of our opinion on direct appeal as well as an affidavit by defendant. In his affidavit, defendant averred as follows:

"3. Prior to my jury trial ***[,] I advised my counsel that there were two defense witnesses I wished to call: Genero Hendrix and Jimmy Lester.

4. These witnesses were not called [by] my attorney.

5. Genero Hendrix would have testified that the drugs in question were all his and not mine.

6. Jimmy Lester would have testified that he did not bring the drugs to Decatur on March 22, 2006, or any other time, for me and that he observed my arrival on the date in question at the home of Zunden [*sic*] Cotton where he did not see me bring anything into the house or the kitchen.

***

8. At the trial David Dailey, a Decatur Police Detective testified that he found 15 bags of material and that he tested only one bag for cocaine before he emptied them all into one large evidence bag which became People's Exhibit [No.] 2. This information had been withheld from the defense and was not known by the defense at the time of trial. There was no report in the Pre-Trial Discovery disclosing what he had done, mixing the bags."

¶ 28 On October 8, 2010, the trial court entered an order summarily dismissing the postconviction petition as "frivolous and patently without merit." See 725 ILCS 5/122-

2.1(a)(2) (West 2010). As for defendant's claim that Rueter had rendered ineffective assistance by entering into the stipulation regarding People's exhibit No. 2, the court observed that, apart from the question of whether entering into this stipulation was substandard performance on Rueter's part, defendant had to show resulting "prejudice." See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the court's view, defendant had failed to make this showing of "prejudice." The court reasoned:

> "Clearly, the purpose of the stipulation was to make it unnecessary for Cravens to testify as to his opinion that the white powder in People's exhibit [No.] 2 was 926 grams of cocaine. The Defendant does not present any evidence or suggestion that he could have adduced evidence that is outside the record indicating either that Cravens would not have testified at the trial or that his testimony would have been any different from the stipulation. Therefore, the Court finds that the Defendant has failed to make the requisite showing that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different."

Thus, in the court's opinion, defendant could establish "prejudice" within the meaning of *Strickland* only by presenting evidence that, if Rueter had declined to enter into the stipulation, (1) Cravens would not have testified at trial or (2) if Cravens had testified, he would not have testified that People's exhibit No. 2 was 926 grams of cocaine.

¶ 29 As for failing to call Hendrix and Lester as witnesses, the trial court regarded that decision as "clearly within the realm of trial counsel's strategic decisions." Besides, defendant's averment as to what these two witnesses would have said on the stand was, in the court's view, insufficient to warrant an evidentiary hearing.

¶ 30 It does not appear that, in its dismissal order, the trial court explicitly addressed the remaining claim in defendant's postconviction petition, namely, the claim that the State had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose to the defense, ahead of trial, that Dailey had commingled the substances by dumping the contents of the 15 bags into a single container and that, as a consequence, the crime laboratory never had an opportunity to analyze the 15 substances separately.

¶ 31                                D. The Motion for an Extension of Time

¶ 32 On November 9, 2010, 32 days after the trial court summarily dismissed the postconviction petition, Dedman filed a "Motion To Extend Time To File a Motion To Reconsider." This actually seems to be a motion to file a motion for reconsideration *instanter*, because the proposed motion for reconsideration, handwritten by defendant but unsigned, is attached to Dedman's motion. Dedman writes: "The Defendant has drafted a Motion to Reconsider, a copy of which is attached hereto, but because he is incarcerated he cannot mail this motion to the clerk and other parties until November 9, 2010, or later."

¶ 33 On November 12, 2010, defendant filed a typewritten version of his *pro se* motion for reconsideration, which bore his own signature.

¶ 34 We note that the defense failed to obtain an extension of time within 30 days after the summary dismissal. This would seem to pose a jurisdictional problem. Because the trial court granted no extension within the 30-day period, the notice of appeal, filed on June 2, 2011,

-7-

would seem to be untimely. See *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 348 (1990); *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 10; *People v. Dominguez*, 366 Ill. App. 3d 468, 472 (2006).

¶ 35    As it turns out, though, we need not consider the timeliness of this appeal, because on September 15, 2011, the supreme court issued a supervisory order directing us to regard defendant's June 2, 2011, notice of appeal "as a validly filed notice of appeal." *People v. Coleman*, No. 112857 (Sept. 15, 2011) (nonprecedential supervisory order). It would seem, then, that we should regard the motion for an extension of time, the motion for reconsideration, and the denial of the motion for reconsideration as valid, too, since they preceded the "validly filed" notice of appeal.

¶ 36    We merely did not want to appear to be overlooking, or glossing over, what otherwise might have been a jurisdictional problem. See *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal. *** Indeed, the ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case.").

¶ 37                              E. The *Pro Se* Motion for Reconsideration

¶ 38    On March 4, 2011, Dedman filed a motion to withdraw from representing defendant, because defendant wished to proceed *pro se*. (Defendant filed a rather extensive response to Dedman's motion to withdraw, recapitulating for the trial court all his correspondence with Dedman. We need not discuss these interactions between Dedman and defendant.) On March 30, 2011, the trial court granted Dedman's motion to withdraw. Dedman's withdrawal enabled the court to consider defendant's previously filed *pro se* motion for reconsideration.

¶ 39    In his motion, defendant argued that, if not for Rueter's "erroneous stipulation" as to People's exhibit No. 2, the State would have had to call Cravens to testify and, as defendant's investigation revealed, Cravens would have admitted he had performed no purity test on the exhibit. In the course of the postconviction proceeding, defendant hired Bill Clutter Investigations, and an investigator, Vanessa Nelson-Knox, spoke with Cravens. Attached to the motion for reconsideration was an unsworn letter, dated November 13, 2009, from Nelson-Knox to defendant stating: "As you already know, Mr. Cravens stated that he did not perform a purity test on the evidence."

¶ 40    In addition, defendant argued in his motion for reconsideration that the State had violated *Brady* by failing to make a timely pretrial disclosure of information that was materially favorable to the defense, namely: (1) the commingling of the contents of the 15 bags at the crime scene and (2) the failure to test People's exhibit No. 2 for purity. Defendant complained: "An indictment was entered against the defendant for a felony that was enhanced because o[f] the amount of grams involved minus any true indication the controlled substance[s] were in fact 926 grams total."

¶ 41    On March 30, 2011, defendant followed up by filing an affidavit by Nelson-Knox. In her affidavit, Nelson-Knox averred that she was a private investigator employed by Bill Clutter Investigations in Springfield; that she was assigned to do investigation work in defendant's

-8-

postconviction case; and that on December 21, 2009, she interviewed Cravens by telephone. Specifically, her affidavit reads as follows:

"3. On December 21, 2009, I interviewed by phone, retired Illinois State Police Forensic Scientist, Michael E. Cravens, regarding the evidence of 926.0 grams of chunky white powder, and <.1 grams of a chunky white material, that he tested in the June 22, 2006 Illinois State Police laboratory report # S06-002598.

4. Mr. Cravens stated to reporting agent that he did not perform a quantative [*sic*] analysis on this evidence to check for purity of cocaine.

5. Mr. Cravens stated to reporting agent that he does not support how the collection of evidence was performed in this case, referring to it as 'bad evidence gathering.'

6. Mr. Cravens was thanked for his time and confirmed that he had all of reporting agent's contact information.

7. Attempts were made by phone in 2010 to interview Mr. Cravens again to further clarify the actual tests that were performed by him in this case.

8. Mr. Cravens did not responded [*sic*] to any of Reporting agent's requests for another interview."

¶ 42 On May 25, 2011, the trial court denied defendant's motion for reconsideration. The court made the following docket entry:

"AS TO DEFENDANT'S MOTION TO RECONSIDER–Cause removed from advisement.

The court has reviewed the common law record as well as the Defendant's Motion to Reconsider and finds as follows: The court entered an Order denying Defendant's Petition for Post-Conviction Relief on October 8, 2010. The Court finds that the Defendant raises the same issues in his Motion for Reconsideration as was previously set forth in the original Petition for Post-Conviction Relief. Therefore, the Court has previously ruled on these issues and DENIES the Defendant's Motion to Reconsider the Petition for Post-Conviction Relief."

¶ 43 This appeal followed.

¶ 44 II. ANALYSIS

¶ 45 A. The Standard for Summary Dismissal

¶ 46 The State asserts that "[t]he trial court properly denied defendant's postconviction petition as it failed to state the gist of a constitutional claim." For purposes of a summary dismissal, however, the question is not whether the petition "state[s] the gist of a constitutional claim." Rather, the question is whether the petition is "frivolous or *** patently without merit"–*that* is the standard the statute lays down for the summary dismissal of a postconviction petition. 725 ILCS 5/122-2.1(a)(2) (West 2010). The supreme court has said:

"[O]ur use of the term 'gist' describes what the defendant must allege at the first stage; it is not the legal standard used by the circuit court to evaluate the petition, under section

122-2.1 of the Act, which deals with summary dismissals. Under that section, the 'gist' of the constitutional claim alleged by the defendant is to be viewed within the framework of the 'frivolous or *** patently without merit' test." *Hodges*, 234 Ill. 2d at 11.

¶ 47   Section 122-2.1(a) of the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(a) (West 2010)) says that, within 90 days after the filing and docketing of a postconviction petition, the trial court shall examine the petition and shall enter an order pursuant to section 122-2.1 (725 ILCS 5/122-2.1 (West 2010)). Subsection (a)(2) (725 ILCS 5/122-2.1(a)(2) (West 2010)) says that, if the defendant has been sentenced to imprisonment and if the court determines that his or her petition is "frivolous or *** patently without merit," the court "shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." This first stage in the postconviction proceeding "allows the circuit court to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit." (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 9. If the court does not summarily dismiss the petition as "frivolous or *** patently without merit" within 90 days after the filing and docketing of the petition, "the court shall order the petition to be docketed for further consideration in accordance with Sections 122-4 through 122-6" (725 ILCS 5/122-4 to 122-6 (West 2010)): that is, the petition advances to the second stage of the postconviction proceeding. 725 ILCS 5/122-2.1(b) (West 2010).

¶ 48   The Post-Conviction Hearing Act does not define the terms "frivolous" and "patently without merit," but the supreme court has explained:

"[A] *pro se* petition seeking postconviction relief under the Act may be summarily dismissed as 'frivolous or *** patently without merit' pursuant to section 122-2.1(a)(2) only if the petition has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record. [Citation.] Fanciful factual allegations include those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17.

The unlikelihood of a factual proposition does not make that proposition "fantastic or delusional," for the unlikely can turn out to be true. (Internal quotation marks omitted.) *Id.* at 13 & n.5.

¶ 49   Thus, a trial court should not summarily dismiss a postconviction petition unless its lack of legal and factual merit is certain and indisputable. For example, if the petition claims ineffective assistance of counsel, the question, at the first stage of the postconviction proceeding, is not whether the defendant has " 'demonstrate[d]' or 'prove[d]' ineffective assistance by 'showing' that counsel's performance was deficient and that it prejudiced the defense." *Tate*, 2012 IL 112214, ¶ 19. That is the burden the defendant must carry in the second stage, in which he or she must "make a substantial showing of a constitutional violation." (Internal quotation marks omitted.) *Id.* In the first stage, by contrast, "[a] different, more lenient formulation applies" (*id.*): we apply not the *Strickland* test but the " 'arguable' *Strickland* test," and that qualifier "arguable" is crucial–it is not synonymous with

"ultimately correct" (*id.* ¶ 20). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Internal quotation marks omitted and emphases in original.) *Id.* ¶ 19.

¶ 50    As we have said, we decide *de novo* whether the petition deserves to be summarily dismissed as legally and factually inarguable. *Hodges*, 234 Ill. 2d at 9. "[A] petition which is sufficient to avoid summary dismissal is simply one which is *not* frivolous or patently without merit." (Emphasis in original.) *Id.* at 11.

¶ 51            B. Omitting To Call Hendrix and Lester as Witnesses for the Defense

¶ 52    In support of his allegation that Rueter rendered ineffective assistance by failing to call Hendrix and Lester as witnesses for the defense, defendant submitted his own affidavit averring that Hendrix and Lester "would have testified" to certain factual propositions. Defendant did not explain, in his postconviction petition, why affidavits from Hendrix and Lester themselves were unavailable.

¶ 53    Section 122-2 of the Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2010)) says: "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." Other than saying that the affidavits must support the allegations in the postconviction petition, section 122-2 says nothing about the required contents of the affidavits. Because the affidavits are supposed to "establish that a petition's allegations are capable of objective or independent corroboration" (*Hodges*, 234 Ill. 2d at 10), thereby demonstrating that an evidentiary hearing would be worthwhile (*People v. Harris*, 91 Ill. App. 3d 376, 379 (1980)), the affidavits should "be made on the personal knowledge of the affiants" and should "affirmatively show that the affiant, if sworn as a witness, [could] testify competently thereto" (Ill. S. Ct. R. 191(a) (eff. July 1, 2002)).

¶ 54    Granted, the rule we are quoting, Rule 191(a), does not apply, by its terms, to proceedings for postconviction relief. *Id.* Nevertheless, the supreme court has applied Rule 191(a) to another type of collateral proceeding, a proceeding pursuant to section 2-1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, ¶ 2-1401) for relief from judgment. *People v. Sanchez*, 115 Ill. 2d 238, 285 (1986). Given the purpose that an affidavit attached to a postconviction petition is supposed to serve, we conclude that this affidavit likewise should consist of factual propositions to which the affiant could testify in an evidentiary hearing.

¶ 55    If called to the witness stand, defendant could not testify to what Hendrix and Lester would say if they were called to the witness stand. See *People v. Gray*, 2011 IL App (1st) 091689, ¶ 16 ("[T]he content of the 'affidavit' is no more than hearsay, which, as a general rule, is insufficient to support a [postconviction] claim."). His testimony as to what *they* would say would be objectionable on the grounds of speculation and hearsay. In his postconviction petition, defendant did not explain why affidavits from Hendrix and Lester were unavailable. See 725 ILCS 5/122-2 (West 2010) ("or shall state why the same are not attached"). Because defendant's allegations of ineffective assistance with respect to the

failure to call Hendrix and Lester at trial were unsupported by "affidavits, records, or other evidence," those allegations by themselves did not merit further proceedings, as the trial court correctly held. *Id.*

¶ 56       The petition, however, contains other allegations.

¶ 57                    C. Ineffective Assistance By Entering into the Stipulation

¶ 58              1. *The Threshold Question of Which Materials in the Record*
                     *We Should Consider When Reviewing This Claim*

¶ 59       The State says that, "[i]n appealing the trial court's dismissal of his postconviction petition, defendant relies almost entirely on his arguments and affidavits contained in his motion to reconsider" and in his "response to his post-conviction attorney's motion to withdraw." The State then cites two pages of defendant's brief. In those cited pages, defendant refers to Nelson-Knox's unsworn letter as well as to her subsequent affidavit–materials that defendant did indeed submit in support of his motion for reconsideration.

¶ 60       Nelson-Knox's letter, because it was unsworn, did not warrant further postconviction proceedings. See *People v. Enis*, 194 Ill. 2d 361, 379-80 (2000). Affidavits, however, are valid supporting evidence (725 ILCS 5/122-2 (West 2010)), and defendant additionally filed an affidavit by Nelson-Knox. It is true that, in her affidavit, Nelson-Knox reports what Cravens told her and that the record contains no affidavit by Cravens himself. But Nelson-Knox's affidavit explains the lack of an affidavit from Cravens himself: he never responded to her requests for a further interview. See *id.* ("The petition shall have attached thereto affidavits *** *or shall state why the same are not attached.*" (Emphasis added.)).

¶ 61       To be sure, as the State points out, Nelson-Knox's affidavit was not "attached" to the postconviction petition (*id.*), but, instead, defendant filed her affidavit in support of his motion for reconsideration, *after* the summary dismissal of his petition. The State argues that, by submitting Nelson-Knox's affidavit after the summary dismissal of the petition instead of moving to amend the petition before the summary dismissal by adding Nelson-Knox's affidavit to it, defendant is trying to evade the "waiver," or more accurately, forfeiture, *i.e.*, the procedural default, mandated by section 122-3 (725 ILCS 5/122-3 (West 2010)). That section provides: "Any *claim* of substantial denial of constitutional rights not raised in the original or an amended petition is waived." (Emphasis added.) *Id.* The *claim*, however, already was in the postconviction petition that Dedman filed: a claim that Rueter had rendered ineffective assistance by entering into the stipulation. Nelson-Knox's affidavit was not a new claim; rather, it was additional evidence in support of the preexisting claim. Defendant requested the trial court to reconsider the summary dismissal of that claim in the light of additional evidence.

¶ 62       A defendant may file a motion to "reconsider," or to vacate, the summary dismissal of a postconviction petition (735 ILCS 5/2-1203(a) (West 2010); *Dominguez*, 366 Ill. App. 3d at 472), and one of the purposes of a motion for reconsideration is "to bring to the court's attention newly discovered evidence" (*Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 23). If the motion for reconsideration presents new evidence, it lies within the trial

court's discretion whether to consider the new evidence. *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492-93 (2009); *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 617 (1995). If, in its discretion, the trial court in this case decided to disregard Nelson-Knox's affidavit on the ground of lack of diligence, one might expect that the court would have said so. The court did not say so. Instead, the court merely said that the motion for reconsideration "raise[d] the same issues" as the postconviction petition and that the court "ha[d] previously ruled on these issues."

¶ 63    So, it appears that, in the trial court's view, the problem with Nelson-Knox's affidavit was not its lateness but its legal insignificance. The court did not decline to consider her affidavit. Rather, the court said it had "reviewed the common law record," which, by definition, would include "any documentary exhibits offered and filed by any party." Ill. S. Ct. R. 321 (eff. Feb. 1, 1994). Like the trial court, then, we will consider Nelson-Knox's affidavit–which, as we will explain, was overkill anyway.

¶ 64    Even if Nelson-Knox's affidavit were disregarded, the absence of affidavits is not fatal to a postconviction petition if the petition finds support in the record. 725 ILCS 5/122-2 (West 2010) ("affidavits, records, or other evidence"). As we will discuss, the record alone makes defendant's remaining two claims arguable, namely, the claim that Rueter rendered ineffective assistance by entering into the stipulation and the claim that the State violated *Brady* by failing to make a pretrial disclosure of the commingling of the substances.

¶ 65                    2. *The Elements of Strickland*

¶ 66    The postconviction petition alleges that Rueter rendered ineffective assistance by stipulating that People's exhibit No. 2 was 926 grams of cocaine, a stipulation that defendant criticizes as unwarranted and ill-advised, considering that Dailey had commingled the contents of the 15 bags into 1 bag before sending it to the crime laboratory for chemical analysis, making separate analyses of each of the 15 substances impossible. In response to that allegation, the trial court observed: "The Defendant does not present any evidence or suggestion that he could have adduced evidence that is outside the record indicating either that Cravens would not have testified at trial or that his testimony would have been any different from the stipulation."

¶ 67    But is *that* the evidence defendant had to adduce to *arguably* show "prejudice" within the meaning of *Strickland*? According to *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[T]his standard does not require a defendant to demonstrate that counsel's conduct more likely than not altered the outcome in the case." *People v. Patterson*, 192 Ill. 2d 93, 122 (2000) (citing *Strickland*, 466 U.S. at 693). "Instead, a reasonable probability 'is a probability sufficient to undermine confidence in the outcome.' " *Patterson*, 192 Ill. 2d at 122 (quoting *Strickland*, 466 U.S. at 694). The question, for purposes of "prejudice," is not whether the outcome "*would* have been different" (emphasis in original) (*Patterson*, 192 Ill. 2d at 123); rather, the question is whether the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

¶ 68    Under this standard of what constitutes "prejudice," defendant would not have to prove that, had Rueter refused to enter into the stipulation and had the State consequently called Cravens to the stand, Cravens actually would have given testimony less favorable to the State than the stipulation–although, arguably, defendant has adduced such evidence through Nelson-Knox's affidavit, in which she avers that Cravens told her he never tested People's exhibit No. 2 for purity. (Again, Nelson-Knox explained the lack of an affidavit from Cravens himself by stating that he never responded to her requests for a further interview. See 725 ILCS 5/122-2 (West 2010) ("or shall state why the same are not attached").)

¶ 69    Apart from Nelson-Knox's affidavit, the record alone suggests that the stipulation rescued the State from a potentially serious problem, considering that, first, the weight of the substance containing a controlled substance was an element the State had to prove beyond a reasonable doubt (*Coleman*, 391 Ill. App. 3d at 971; *People v. Coleman*, 301 Ill. App. 3d 37, 44 (1998)) and, second, according to case law, it is necessary to subject each bag of powder to chemical analysis in order to prove, beyond a reasonable doubt, that each bag contains a controlled substance. If there are several bags of powder, chemically analyzing the contents of only one bag does not prove, beyond a reasonable doubt, that each of the other bags contains a controlled substance. *People v. Jones*, 174 Ill. 2d 427, 429-30 (1996); *People v. Young*, 220 Ill. App. 3d 488, 497-98 (1991); *People v. Hill*, 169 Ill. App. 3d 901, 911 (1988); *People v. Ayala*, 96 Ill. App. 3d 880, 882-83 (1981). Obviously, it is impossible to separately analyze the contents of each bag after the contents of the bags have been commingled. At that juncture, a mere positive result would shed no light on the question of which of the bags had contained cocaine.

¶ 70    Maybe, however, at trial, the trial court would have granted the State a recess long enough that Cravens could take People's exhibit No. 2 back to the laboratory and test it for purity. And maybe this additional testing would have revealed such a high percentage of purity that Cravens could extrapolate backward and opine that it was mathematically impossible for any of the 15 bags to lack cocaine. (For example, if the commingled substance, 926 grams, were 100% pure, all 15 bags had to contain cocaine because of the absence of any impurity. If the 926 grams were 90% pure, they would include 92.6 grams of a substance that was not cocaine, and therefore it would be possible that one of the 63- or 64-gram bags lacked cocaine. If the 926 grams were 80% pure, they would include 185.2 grams of a substance that was not cocaine, and therefore it would be possible that two of the bags lacked cocaine–and so forth.) And maybe the jury would have been convinced by this unscrambling of eggs. "Maybe" does not make a "reliable" trial (*Strickland*, 466 U.S. at 687) or inspire "confidence" in its outcome (*id.* at 694).

¶ 71    An erroneous stipulation by defense counsel can amount to ineffective assistance. For example, in *Coleman*, 301 Ill. App. 3d at 41 (a different Coleman than defendant in the present case), trial counsel stipulated that the contents of the bags that police officers had seized from the defendant had tested " 'positive for heroin in the amount of 70.2 grams.' " In actuality, however, a laboratory report "indicated a positive test for slightly more than 15 grams of heroin." *Id.* at 44. Because trial counsel "stipulated to an amount more than what was actually tested" and because, in the bench trial, the trial court relied on that stipulation to find the defendant guilty of possessing more than 15 grams of heroin, the appellate court

found both elements of *Strickland* to be proved, deficient performance as well as prejudice. *Id.* at 47.

¶ 72 We need not, and should not, definitively resolve the question of whether Rueter rendered ineffective assistance. See *Tate*, 2012 IL 112214, ¶ 26. Suffice it to say that defendant's claim of ineffective assistance is "arguable" (see *id.* ¶ 20; *Hodges*, 234 Ill. 2d at 12-13); it is not "frivolous" or "patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2010).

¶ 73                                    D. The *Brady* Claim

¶ 74 Under *Brady*, due process requires the State to disclose evidence that is both favorable to the accused and "material" to either guilt or punishment. *People v. Harris*, 206 Ill. 2d 293, 311 (2002). The standard of "materiality" for purposes of *Brady* is identical to the standard of "prejudice" for purposes of ineffective assistance: "[e]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* "Disclosure by the government [of *Brady* evidence] must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case ***." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).

¶ 75 That Dailey commingled the contents of the 15 bags into 1 bag before sending the contents to the crime laboratory for analysis is, arguably, evidence material to guilt or punishment, for the reasons we have discussed. According to defendant's affidavit, the State never informed the defense of this commingling before Rueter entered into the stipulation. The record does not appear to contradict defendant in this respect; indeed, in the trial transcript, both attorneys seem to speak of the commingling as a surprise to the defense. Our discussion of "prejudice" in connection with ineffective assistance applies equally to the *Brady* claim. Therefore, the postconviction petition raises an arguable violation of due process along with the arguable claim of ineffective assistance.

¶ 76                                       III. CONCLUSION

¶ 77 For the foregoing reasons, we reverse the trial court's judgment and remand this case for further postconviction proceedings.

¶ 78 Reversed and remanded.