2016 IL App (1st) 142544-U

SIXTH DIVISION
DATE 6/30/2016

No. 1-14-2544

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 10177 |
| | ) | |
| NORMAN JOHNSON, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HALL delivered the judgment of the court.
Justices Hoffman and Delort concurred in the judgment.

**O R D E R**

¶ 1    *Held*:   Summary dismissal of defendant's post-conviction petition affirmed. Defendant failed to state an arguable claim of ineffective assistance of counsel for not calling a certain witness where he provided neither a supporting affidavit or other adequate supporting evidence nor a sufficient explanation for their absence.

¶ 2    Defendant Norman Johnson appeals from an order of the circuit court of Cook County summarily dismissing his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2012)). On appeal, defendant contends that his petition stated

the arguable basis of a claim that trial counsel was ineffective for failing to call a witness. We affirm.

¶ 3    Defendant and codefendant Jason Coley were charged with the September 21, 2008, shooting death of Jerrell Jackson. Following a jury trial, during which Coley testified on behalf of the State, defendant was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and sentenced to 40 years' imprisonment (730 ILCS 5/5-8-1(a)(1)(a) (West 2008)). This court affirmed the conviction and sentence. *People v. Johnson*, 2013 IL App (1st) 111317.

¶ 4    At trial, during opening statements, counsel argued that one of the victims, Andrew Sanford, who was shot by the offenders while sitting in his apartment, had the best position to see who the shooters were and the evidence would show that he was looking out his window when he said three shooters came up and shot at the men playing dice. Counsel further argued that Sanford could not identify defendant when he looked at his physical lineup. Counsel stated that Sanford told police that he recognized defendant from the neighborhood but still could not identify him as one of the shooters, and he told paramedics arriving at the scene that he only heard shots, which was inconsistent. Counsel maintained that, at most, Sanford did not see defendant out there at all. Sanford was not called as a witness and did not testify at trial.

¶ 5    The evidence at trial showed that the events in the case stemmed from an underlying ongoing dispute between Douglas Johnson and Coley. In the late evening of September 21, 2008, Johnson was riding a bicycle in the 700 block of South St. Louis Avenue in Chicago. Jackson and several other men were playing dice on the sidewalk while Jackson's girlfriend, Margaret

Faulkner, was watching the game from a first-floor window of an apartment building located almost directly across the street from the dice game.

¶ 6    Faulkner testified that after the game ended, everyone left except for Jackson, and Faulkner noticed Johnson ride by on his bicycle. She then observed two men wearing hooded sweatshirts emerge from the alley near her window. The men looked toward Johnson and began shooting. Johnson was shot and fell, but then got up and ran. Faulkner went to wake her cousin, and when she returned to the window, she saw Jackson lying on the ground and the shooters were gone.

¶ 7    Johnson, a convicted felon, testified that just prior to the shooting, he was riding a bicycle along the sidewalk when he encountered the dice game. As Jackson was shaking the dice preparing to roll, Johnson observed three men across the street standing in a triangle formation. As Jackson turned to look, one of the three men said, "yeah, nigger," and started shooting. Johnson recognized the voice as belonging to Coley.

¶ 8    Johnson jumped off his bicycle and ran along with Jackson, who fell to the ground. Johnson was shot and fell to the ground but then got up and ran from the scene. Johnson was taken to the hospital where he received treatment for a gunshot wound to his arm.

¶ 9    Johnson denied speaking to detectives at the hospital. However, it was stipulated that, if Detective Maresso was called to testify, she would have testified that she interviewed Johnson in the emergency room of the hospital on September 22, 2008, and he told her that he recognized Coley as one of the shooters, that he and Coley had grown up in the same neighborhood and had known each other for a number of years.

¶ 10    Detective Roberto Garcia interviewed Johnson on October 5, 2008, and showed him two photo arrays. Johnson identified Coley as one of the shooters and defendant as being with Coley when the shooting began. At trial, Johnson testified that, when he identified them, he merely identified who they were and not that they had done anything.

¶ 11    Coley was arrested in December 2008 in connection with the shooting and gave a statement confessing and identifying defendant as a shooter. On December 16, 2008, Johnson and Faulkner viewed separate physical lineups and identified Coley as one of the shooters. Faulkner testified that two weeks after she had identified Coley, she was informed by police that he had confessed to the shooting.

¶ 12    Defendant was later arrested, and Faulkner identified him as the second shooter in a physical lineup. Faulkner testified that police did not suggest whom she should identify.

¶ 13    Faulkner testified before a grand jury on May 26, 2009, and identified a photograph of Coley as the first shooter and a photograph of defendant as the second shooter. At trial, Faulkner testified that defendant was the second shooter.

¶ 14    Johnson acknowledged at trial that he appeared before a grand jury on May 28, 2009, and identified defendant and Coley as the persons he saw raise their respective guns and fire. Contrary to his grand jury testimony, Johnson testified at trial that he did not actually observe defendant shoot his firearm because after Coley started shooting, he closed his eyes and ran. He did not see the shooters' faces, and only identified Coley based on his voice. Johnson acknowledged telling the assistant State's attorney (ASA) that he would refuse to testify at trial and would claim that he was being forced to testify.

¶ 15    At the time of trial, Coley was serving a 24-year prison sentence after pleading guilty to the murder of Jackson. Coley testified that Johnson was the intended target, not Jackson. Coley testified that just prior to the shooting, he met with defendant and some other man he did not know. Coley, defendant and the unnamed man went to look for Johnson. Coley found Johnson and a crowd of men playing dice. Coley testified that, as he and Johnson looked at each other, he thought he saw Johnson reaching into his waistband for a gun, and he began shooting at Johnson.

¶ 16    Coley claimed he did not recall if defendant or the other man had guns in their hands when the shooting started. However, in a prior statement to detectives and the ASA, Coley stated that he and defendant were both armed with handguns. Coley further stated that he fired his gun five or six times and was not sure how many times defendant did so.

¶ 17    Evidence technicians and lab analysts testified that shell casings were recovered from the scene. These shell casings were fired from two different guns.

¶ 18    Chicago police forensic investigator Carl Brasic testified that there were metal fragments and other damage from fired bullets in apartment 1A of 716 South St. Louis Avenue. Inside this apartment, there was blood on the floor and bullet damage to an interior curtain of the apartment. The man who lived in this apartment was struck by one of the bullets, but survived.

¶ 19    Chicago police detective Gregory Jacobson testified that he investigated the shootings. Jackson expired at the scene, and victims Johnson and Sanford were transported to the hospital. Sanford was the individual who was struck with a bullet in the apartment at 716 South St. Louis Avenue.

¶ 20      Defendant presented an alibi defense, seeking to establish through two witnesses that he was at his girlfriend's house at the time of the shooting.

¶ 21      During closing arguments, defense counsel noted, in relevant part, that there was a third victim, "a solid citizen," who was shot in his home, Sanford. His residence was on the west side of the street. Counsel argued Sanford lived on the first floor with "a perfect shot for looking out the window and seeing who did this," yet, the State did not call him. Counsel noted that defendant did not have the burden of proof and did not have to bring in eyewitnesses to persuade the jury that he did not commit the crime.

¶ 22      In rebuttal, the State noted that there was no evidence that Sanford saw anything and that he was shot in the window behind the drapes. The State noted that the jury cannot speculate as to why he was not called to testify.

¶ 23      At the close of evidence, the jury found defendant guilty of first degree murder and the court later sentenced him to 40 years' imprisonment.

¶ 24      On February 10, 2014, defendant filed a *pro se* post-conviction petition alleging, *inter alia*, that trial counsel was ineffective for failing to call Sanford, the victim who was sitting in his apartment facing St. Louis Avenue when he was struck by a stray bullet that went through his window. Defendant maintained that counsel should have called Sanford to testify as Sanford was an occurrence witness who would have corroborated his claim of actual innocence by testifying that defendant was not present during the shooting.

¶ 25      In support of his petition, defendant attached his own affidavit averring that trial counsel showed him statements made by Sanford. Defendant averred that he asked counsel why she did

not call him, and she responded that for two years she gave it some thought and decided that she wanted the State to call Sanford.

¶ 26    Defendant also attached, as relevant here, a copy of a police report regarding the shooting which listed victim one as Jackson but had blacked out the names of victims two and three. The report by Officer Jankowski stated that he responded to a person shot call and, upon arrival, observed victim number one, Jackson, lying on the ground with gunshot wounds. Victims number two and three both had gunshot wounds. The report stated, in relevant part, regarding the second victim:

> "Witness (blacked out) related that he heard people making loud noises outside (blacked out) look[ed] outside and saw some people playing dice (blacked out) then he observed (3) M-1-17-20 walk south on St. Louis and approached above victim and began to [shoot at the] people playing dice. At [this] time he was struck in the (blacked out) and fled (blacked out)."

¶ 27    The circuit court summarily dismissed defendant's petition, finding, in relevant part, that defendant could not show that his trial counsel's performance fell below an objective standard of reasonableness, and that decisions regarding which witnesses to call were matters of trial strategy. The court also found that defendant failed to provide the requisite supporting affidavit from Sanford attesting that he was available and willing to testify on behalf of defendant. The court concluded that the petition was frivolous and patently without merit.

¶ 28    On June 4, 2014, defendant filed a *pro se* motion to reconsider, alleging that if Sanford was called to testify, he would have stated that he was standing in his window, saw the events

from beginning to end, and did not see defendant "out there." Defendant further alleged that Sanford was in prison and would sign an attached "proposed affidavit."

¶ 29    This "proposed affidavit" provided that Sanford was in his apartment and witnessed the shooting from beginning to end. He was shot and thought it was strange that he was not called to testify at trial. He told police that he did not see defendant on the night in question. The "affidavit" further provided that Sanford was making these statements without duress or coercion, and without promises of compensation of anything of value. If he was called as a witness, he would be able to affirmatively attest to the same.

¶ 30    The circuit court denied defendant's motion to reconsider, and he appealed.

¶ 31    On appeal, defendant contends that his petition stated the arguable basis of a claim that trial counsel was ineffective for failing to call Andrew Sanford as an occurrence witness whose testimony would have exonerated him. He maintains that his allegation was supported by statements made by counsel during closing arguments and is accompanied by a police report that demonstrates Sanford had a clear view of the shooters immediately before the incident occurred.

¶ 32    At the first stage of post-conviction proceedings, a *pro se* defendant need only present the gist of a meritorious constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The gist standard is a low threshold, requiring that defendant only plead enough facts to assert an arguably constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). If a petition has no arguable basis in law or in fact, it is frivolous and patently without merit, and the trial court must summarily dismiss it. *Id.* at 16. Our review of a first-stage dismissal is *de novo. People v. Coleman,* 183 Ill. 2d 366, 388-89 (1998).

¶ 33    To prevail on a claim of ineffective assistance of counsel, defendant must show that counsel's performance was objectively unreasonable and that he was prejudiced as a result thereof. *Hodges*, 234 Ill. 2d at 17, citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). At the first stage of post-conviction proceedings, a petition alleging ineffective assistance of counsel may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that he was prejudiced thereby. *People v. Tate*, 2012 IL 112214, ¶19.

¶ 34    A *pro se* petitioner is not excused from providing any factual detail whatsoever surrounding the alleged constitutional violation. *Hodges*, 234 Ill. 2d at 10. Section 122-2 of the Act requires: "the petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* (quoting 725 ILCS 5/122-2 (West 2006)). The purpose of this requirement is to establish that a petition's allegations are capable of objective or independent corroboration. *Id.* at 10 (citing *People v. Delton*, 227 Ill. 2d 247, 254 (2008)). " 'Thus, while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent.' " *Id.* (quoting *Delton*, 227 Ill. 2d at 254-55.

¶ 35    Where, as here, defendant alleges ineffective assistance of counsel for failure to call a witness, defendant must set forth sufficient facts to establish a constitutional violation for purposes of invoking the Act. *Hodges*, 234 Ill. 2d at 17-18. Besides a summary of the witness's testimony and an allegation that the defendant told counsel regarding the witness, the defendant

must also attach affidavits or some other factual documentation that allows independent corroboration of the allegation. *Id*. at 18-19. The affidavit and exhibits must identify with reasonable certainty the sources, character and availability of the alleged evidence supporting the petition's allegations. *Delton*, 227 Ill. 2d at 254 (citing *People v. Johnson*, 154 Ill. 2d 227 (1993)). If the petitioner does not set forth some facts which can be corroborated and are objective in nature, he must explain why this corroboration is absent. *Delton*, 227 Ill. 2d at 254-55. Failure to attach the necessary affidavits, records or other evidence or explain their absence is fatal to a petition and justifies its summary dismissal. *Id.* at 255. If a defendant fails to properly support a petition under section 122-2, the court need not reach the question of whether the petition set forth the gist of a constitutional claim. *Id.*

¶ 36    Defendant claims trial counsel was ineffective for failing to call Sanford, who he claims would have testified that he witnessed the shooting from beginning to end from his apartment window and did not see defendant during the shooting. Defendant, however, did not attach to his petition an affidavit from Sanford. Instead, he claims that counsel's closing argument shows that Sanford would testify that he was not present and that the police report he attached to his petition supports his claim. However, the closing argument is not evidence that supports defendant's claim as it merely states that the State should have called Sanford. As for the police report, it does not name the witnesses, as it is mostly blacked out. Arguably, it could be inferred that Sanford was the second victim noted in the report, as he was the only one shot inside. Crucially, however, the report does not indicate what the victims would have testified to if called at trial to testify, and thus does not support defendant's claim regarding Sanford's testimony.

¶ 37    None of defendant's allegations that Sanford would have provided testimony favorable to defendant are corroborated by the police report or counsel's closing argument. They are entirely speculative. Defendant's claim that Sanford's testimony would have exonerated him must therefore be supported by an affidavit from Sanford (*People v. Enis*, 194 Ill. 2d 361, 380 (2000)), but defendant did not attach one to his post-conviction petition. Unless defendant provides a satisfactory explanation regarding the absence of the affidavit, this absence is fatal to his petition. *Delton*, 227 Ill. 2d at 255.

¶ 38    Defendant asserts he could not obtain an affidavit from Sanford because defendant was *pro se* and both he and Sanford are incarcerated. This explanation is insufficient to excuse the absence of affidavits. Relief under the Act is available only to persons "imprisoned in the penitentiary." 725 ILCS 5/122-1(a) (West 2012). Consequently, the vast majority of post-conviction petitions are filed by defendants who are incarcerated and *pro se*. Although attaching the required documentation will, in some cases, place an unreasonable burden on post-conviction petitioners, that does not mean that petitioners are relieved of bearing any burden whatsoever. *Collins*, 202 Ill. 2d at 68. On the contrary, section 122-2 of the Act makes it clear that a petitioner who is unable to provide the required corroborating documentation must at least explain why such evidence is unobtainable. *Id.* Defendant's status as a prisoner does not excuse his failure to provide the required affidavit or an adequate explanation for its absence.

¶ 39    Defendant argues that he could not obtain an affidavit from Sanford because he and Sanford were in prison, and communications between inmates is prohibited. He did not make this

allegation in his petition and, therefore, cannot make this argument on appeal. *People v. Jones*, 213 Ill. 2d 498, 505 (2004).

¶ 40     Defendant's failure to attach an affidavit to his petition supporting his claims regarding Sanford's testimony and properly explaining its absence is fatal to his claim of ineffective assistance of counsel for counsel's failure to call Sanford. *Collins*, 202 Ill. 2d at 66. Accordingly, we need not reach the question of whether defendant's petition stated the gist of a constitutional claim to survive summary dismissal. *Delton*, 227 Ill. 2d at 254-55; *People v. Brown*, 2014 IL App (1st) 122549, ¶¶46, 49.

¶ 41     That said, we observe that defendant attached a "proposed affidavit" from Sanford to his motion to reconsider the denial of his post-conviction petition. An affidavit may be attached to a motion to reconsider the dismissal of a post-conviction petition where it is considered additional evidence in support of a preexisting claim. *People v. Henderson*, 2014 IL App (2d) 121219, ¶21; *People v. Coleman*, 2012 IL App (4th) 110463, ¶¶61-62. The "proposed affidavit," however, was not signed or notarized. The supreme court recently held that lack of notarization cannot be a basis for dismissing a petition at the first-stage of proceedings, where courts must consider the petition's substantive virtue over its procedural compliance. *People v. Allen*, 2015 IL 113135, ¶¶24, 34. In *Allen*, however, the statement attached to defendant's post-conviction petition, although not notarized, was signed and contained a thumbprint for verification. The supreme court held that the statement qualified as "other evidence" under the Act and was sufficient to support the petition under the forgiving standards of first stage review. *Id.* ¶¶43, 48. In contrast, the "affidavit" here lacks any type of verification and is not signed. Further, it is a "proposed

affidavit," demonstrating it was drafted by defendant, and not Sanford. We conclude that, even under *Allen*, the unsigned "proposed affidavit" is insufficient to satisfy the "other evidence" requirement. Accordingly, the "proposed affidavit" cannot provide the necessary support for defendant's claim. We, therefore, find that defendant failed to state an arguable claim of ineffective assistance of counsel for failing to call Sanford.

¶ 42    In light of the foregoing, we affirm the order of the circuit court of Cook County summarily dismissing defendant's post-conviction petition.

¶ 43    Affirmed.