# Illinois Official Reports

## Appellate Court

*People v. Wallace*, 2015 IL App (3d) 130489

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORRIE WALLACE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0489 |
| Filed<br>Rehearing denied | October 16, 2015<br>November 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 06-CF-536; the Hon. Daniel J. Rozak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Bryon Kohut (argued), both of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Gary F. Gnidovec (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices O'Brien and Wright concurred in the judgment and opinion. |

# OPINION

¶ 1 In October 2008, a Will County jury convicted defendant, Corrie Wallace, of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2006)) and aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2006)). The court sentenced defendant to 70 years for first-degree murder and 18 years for aggravated battery to be served consecutively. Defendant subsequently raised nine issues on direct appeal; this court affirmed his conviction and sentences. *People v. Wallace*, 2011 IL App (3d) 090500-U. In May 2013, defendant filed a postconviction petition, which the trial court dismissed as frivolous and patently without merit. Defendant appeals the dismissal of his postconviction petition arguing: (1) he set forth an arguable claim of actual innocence; and (2) he stated the gist of an ineffective assistance of counsel claim. We disagree and affirm the trial court's summary dismissal of defendant's postconviction petition.

¶ 2                                    BACKGROUND

¶ 3 We provide a summary of the evidence presented at trial here. For a more detailed account of the evidence, reference our previous decision. *Id.* ¶¶ 6-31.

¶ 4 The evidence at defendant's trial showed that the victim in this case, Hallie Parish, was in a vehicle with three other people when he was shot and killed by the defendant in March 2006. Most notably, among those present in the vehicle with the victim were Joe Williams and Charles McAfee. Neither Williams nor McAfee could identify the shooter. Williams was also shot during the incident, but survived. Williams later claimed he received an apology from a person claiming to be the shooter, though Williams refused to identify that person other than to say it was not the defendant. The trial court would not allow Williams to testify about this alleged conversation at trial. We note this issue was raised by defendant on direct appeal, but deemed a forfeited issue by this court. *Id.* ¶¶ 54-56.

¶ 5 Tonya Dandridge's and Zatella Bridge's testimony at trial established that defendant shot the victim while wearing a mask, immediately ran away from the scene, walked back up to the victim shortly thereafter without the mask or gun, and taunted him before walking away again. Their testimony also established that defendant ran away from the scene using the same path he used to approach before the shooting and returned by way of the same path once again when he taunted the victim. Police later discovered that this path led to the home of Tarnisha Davenport.

¶ 6 Officer Stubler, the first responding officer, testified that he overheard people identifying defendant as the shooter while he was protecting the crime scene in the immediate aftermath of the shooting. Stubler located defendant and detained him shortly thereafter behind Davenport's residence. Defendant matched the description of the shooter (in build as well as clothing) as provided by witnesses on the scene that could not identify defendant. Defendant was told he was under arrest and transported from the crime scene to the police department approximately 45 minutes after being detained by Officer Stubler.

¶ 7 When arrested, defendant possessed a key to Davenport's home. In Davenport's home, police located a mask (described by witnesses as being worn by the shooter) and ammunition later determined to have previously been chambered in the same gun used in the shooting.

Defendant's hands later tested positive for gunshot residue and his DNA was on the mask recovered from Davenport's home.

¶ 8 In May 2013, defendant filed *pro se* a 207-page petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-8 (West 2012)). The trial court summarily dismissed defendant's petition as frivolous and patently without merit under section 122-2.1(a)(2) of the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(a)(2) (West 2012)). Defendant's petition asserted many claims, only two of which he appeals now: a claim of actual innocence and an ineffective assistance of counsel claim.

¶ 9 Defendant's actual innocence claim is supported by affidavits from Darius Foster and Adrian Ellis. Foster claims he saw Conley Ratcliffe–who testified at defendant's trial–running away from the area of the shooting with a gun in his hand shortly after he heard the gunshots. Foster also claims he walked up to the vehicle shortly after the victim had been shot, along with the defendant and other unidentified individuals. Ellis, on the other hand, avers in his affidavit that while he was incarcerated with Ratcliffe sometime in 2008, Ratcliffe confessed to him that he was the shooter. Ellis also claims Ratcliffe stated he previously apologized to Williams for shooting him on accident. Defendant asserts these affidavits constitute newly discovered evidence that support his claim of actual innocence.

¶ 10 Defendant argues in his ineffective assistance of counsel claim that his trial counsel should have filed a motion to suppress his arrest at the crime scene, as it was not based on probable cause. Defendant further asserts appellate counsel was equally ineffective for not arguing the same issue on appeal. Defendant alleges his actual innocence and ineffective assistance of counsel claims should be allowed to proceed to the second stage of postconviction proceedings.

¶ 11 ANALYSIS

¶ 12 At the first stage, a postconviction petition may be summarily dismissed only if it is "frivolous" or "patently without merit." *Id.* Appellate review of a first-stage postconviction petition's summary dismissal is *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998). Reviewing courts should determine if a postconviction petition has no arguable basis in law or in fact to determine if it is worthy of summary dismissal. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009); *People v. Allen*, 2015 IL 113135, ¶ 25. At the first stage of a postconviction proceeding, we must determine whether the petition sets forth the "gist" of a constitutional claim. *People v. Boclair*, 202 Ill. 2d 89, 99-100 (2002). If we determine defendant's pleadings meet the minimum requirements, the petition proceeds to the second stage. 725 ILCS 5/122-2.1(b) (West 2012). The defendant, however, has the burden of establishing he has suffered a substantial deprivation of a constitutional right. *People v. Waldrop*, 353 Ill. App. 3d 244, 249 (2004).

¶ 13 I. Defendant's Actual Innocence Claim

¶ 14 A postconviction actual innocence claim is limited to arguments based on newly discovered evidence. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). Courts should grant relief on this basis only when the petitioner's argument is supported by evidence that is new, material, noncumulative, and of such a conclusive character that it would likely change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 84. Courts rarely grant postconviction petitions

based on claims of actual innocence as the standard is "extraordinarily difficult to meet." *Id.* ¶ 94.

¶ 15    Defendant argues that the Foster and Ellis affidavits each set forth a colorable claim of actual innocence. Specifically, defendant asserts it is "at least arguable" both affidavits contain evidence that is newly discovered. In so doing, defense counsel asserts there is no proof that defendant knew Foster was on the scene in the aftermath of the shooting, or that defendant could have known about Ratcliffe's confession to Ellis prior to trial. These arguments are unavailing as they are based on indisputably meritless legal theories.

¶ 16                                    A. Foster's Affidavit

¶ 17    Newly discovered evidence is evidence which was not available at defendant's trial and which defendant could not have discovered sooner through the exercise of due diligence. *Id.* ¶ 96. Furthermore, a claim of actual innocence does not merely question the defendant's guilt, but is so conclusive as to be capable of completely exonerating the defendant. *People v. Savory*, 309 Ill. App. 3d 408, 414-15 (1999); *People v. Coleman*, 2013 IL 113307, ¶ 96. Defendant's failure to state a free-standing claim of actual innocence can fail as a matter of law. *People v. Edwards*, 2012 IL 111711, ¶¶ 31, 36-37.

¶ 18    Here, defendant's claim of actual innocence buttressed by Foster's affidavit fails as a matter of law. Defendant's argument ignores the due diligence requirement of newly discovered evidence and relies heavily on the premise that if there is no proof defendant knew of the evidence prior to trial, his discovery of that information afterward renders the information newly discovered. Defense counsel cites no case law for this proposition, in violation of Illinois Supreme Court Rule 341(h)(7), and therefore forfeits the argument. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); see *People v. Clinton*, 397 Ill. App. 3d 215, 223-24 (2009).

¶ 19    Moreover, defendant's claim is explicitly contradicted by the record. By defendant's own admission, he provided his trial counsel with Foster's name and contact information as a potential witness in preparation for trial. This is *prima facie* evidence that defendant did know Foster was in the area and a potential witness to the incident. That defendant did not know the content of Foster's alleged observations does not render its recent revelation newly discovered. *People v. Montes*, 2015 IL App (2d) 140485, ¶ 24.

¶ 20    Even if Foster's affidavit were considered newly discovered evidence, it does not conclusively support defendant's claim of actual innocence. Accepting the contents of Foster's affidavit as true, Foster cannot conclusively prove defendant was not the shooter. As the State highlights, Ratcliffe could have been running away from the scene with the gun used by defendant. Thus, we find the Foster affidavit is insufficient as a matter of law to support a claim of actual innocence.

¶ 21                                    B. Ellis's Affidavit

¶ 22    Generally, evidence is not considered "newly discovered," such that it can support a postconviction petition for relief based on actual innocence, when it presents facts already known to the defendant at or prior to trial, though the source of those facts may have been unknown, unavailable, or uncooperative. *Id.*

¶ 23    The record establishes that Williams, the other victim of the shooting, testified at trial and was prohibited from asserting that a person he refused to identify was the shooter. McAfee

testified at trial as well. Prior to his testimony, the State argued several motions *in limine* to block specific portions of McAfee's testimony. On the record, the State argued that McAfee should not be allowed to testify that Williams revealed to him that Ratcliffe was the one who apologized to Williams for shooting him in the arm. The defense ultimately conceded such testimony was inadmissible hearsay, and McAfee did not aver such statements during his testimony.

¶ 24   Shortly after McAfee testified, Ratcliffe took the stand and the defense chose not to ask him about his alleged statements to Williams. Therefore, the defense theory that Ratcliffe was the shooter–and not defendant–was available to defendant at trial. The defense cross-examined Ratcliffe, while the record demonstrates they were aware Ratcliffe had allegedly admitted to Williams he was the shooter. Thus, defendant's actual innocence claim, as supported by the Ellis affidavit, is not based on newly discovered evidence.

¶ 25   Furthermore, testimony by Ellis regarding Ratcliffe's alleged confession is hearsay, which cannot be the basis of a defendant's postconviction petition. *People v. Coleman*, 2012 IL App (4th) 110463, ¶ 55. Generally, hearsay is insufficient to support a postconviction petition, particularly when there is no explanation why an affidavit from the declarant is unavailable. 725 ILCS 5/122-2 (West 2012); *People v. Coleman*, 2012 IL App (4th) 110463, ¶ 55. In this case, defendant does not explain why Ratcliffe (the declarant) is unavailable and ignores the fact that Ratcliffe already testified at defendant's trial and therefore actually was available.

¶ 26   Defendant counters that the Illinois Supreme Court recently rejected the argument that evidence needs to be admissible during the first stage of postconviction proceedings in *People v. Allen*, 2015 IL 113135. The majority in *Allen*, however, stated it is sufficient for a postconviction petitioner to provide "substantive evidentiary content" in support of a claim supported by " 'other evidence,' " not an affidavit. *Id.* ¶ 37.

¶ 27   We find that *Allen* speaks to the procedural requirements or defects of a defendant's postconviction petition. In *Allen*, at issue was the legal creation of defendant's supporting affidavit, which was procedurally insufficient. *Id.* ¶ 2. That is not at issue in the case *sub judice*. The substantive requirements of affidavits in postconviction petitions (in this case the status of the averred content as newly discovered evidence or admissible evidence) remains unchanged in the wake of *Allen*.

¶ 28   Inadmissible hearsay cannot constitute substantive evidence by any definition. We cannot believe the supreme court in *Allen* meant for *any* petitioner's claim to survive the relatively abbreviated review of first-stage postconviction proceedings without regard for the substance of the supporting evidence. In fact, the majority explicitly rejected an overly broad interpretation of its ruling in response to direct criticism from the dissent. *Id.* ¶ 38.

¶ 29   The trial court would not let Williams testify that he was given an apology by an anonymous person claiming to be the real shooter. Nor would it let McAfee testify that Williams told him that that person was Ratcliffe. We now have another declarant offering the same information. The information is still inadmissible hearsay, as already ruled upon by the trial court, and substantively cannot support a postconviction petition–even in the first stage. Thus, we find the Ellis affidavit is insufficient as a matter of law to support a claim of actual innocence.

¶ 30                    II. Defendant's Ineffective Assistance of Counsel Claim

¶ 31    Lastly, defendant argues the trial court erred by dismissing his claim of ineffective assistance of counsel. Defendant asserts his trial counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence. Defendant also contends his appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness for this same reason on direct appeal. The State contends that probable cause existed at the time of arrest and any motion filed by the defense to quash defendant's arrest would have been futile.

¶ 32    Again, to survive first-stage dismissal of a postconviction petition, a *pro se* petitioner need only present the "gist" of a constitutional claim. *People v. English*, 353 Ill. App. 3d 337, 339 (2004). Postconviction claims of ineffective assistance of counsel must allege facts sufficient to prove both prongs under *Strickland* in order to succeed: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the defendant was substantially prejudiced as a result. *People v. Gale*, 376 Ill. App. 3d 344, 351 (2007); *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 33    Trial counsel and appellate counsel are held to the same standard in a *Strickland* analysis. *People v. Tenner*, 175 Ill. 2d 372, 378 (1997); *People v. Richardson*, 189 Ill. 2d 401, 412 (2000). On appeal, substantial prejudice is not demonstrated by enumerating the issues appellate counsel did not brief, as appellate counsel is not required to brief every possible issue. *People v. Coleman*, 168 Ill. 2d 509, 523 (1995). Consequently, if defendant's claim of ineffective assistance of trial counsel fails the deficiency prong of *Strickland*, appellate counsel cannot be found deficient for failing to address the same issue on appeal. *Id.*

¶ 34    Defendant alleges the police did not have probable cause to arrest him when Officer Stubler placed him in handcuffs. From our review of the record, this is likely true. The continuation of defendant's argument, however–that defendant was therefore unconstitutionally arrested without probable cause, in violation of the fourth amendment–is patently false. In making this argument, defendant makes two assumptions that are legally inaccurate and factually contradicted by the record: (1) that defendant was under arrest when Officer Stubler placed him in handcuffs; and (2) that Officer Stubler's knowledge needed to be the sole basis for the probable cause supporting the decision to arrest the defendant. Absent these assumptions, defendant's argument falls apart.

¶ 35    We note again that the record makes clear the defendant was detained at the crime scene for approximately 45 minutes before he was placed under arrest and transported to the police station. Shortly before transport, defendant was informed that he was under arrest at *that* time, rather than detained. The legal distinction between detention and arrest is significant. An arrest requires probable cause, while temporary detention need only be supported by reasonable suspicion. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Detention based on reasonable suspicion is based on the totality of the circumstances, which factors in the seriousness of the crime; in this case a murder. *People v. Easley*, 288 Ill. App. 3d 487, 491-92 (1997).

¶ 36    After reviewing the record, we find that Officer Stubler had reasonable suspicion to detain the defendant on scene and his subsequent arrest was supported by probable cause. Contrary to defense counsel's assertions on appeal, the defendant was not placed under arrest by Officer Stubler solely because he overheard anonymous people make the accusation that defendant was the shooter. Officer Stubler's testimony at trial belies this assertion. In relevant part, Officer Stubler stated:

"I made my way to where Mr. Wallace was in the back, took control of him and advised him he was being detained in reference to [*sic*] a suspect of that shooting."

Nowhere in Officer Stubler's testimony does he say that he arrested the defendant at that time. Police reports from other responding officers all clearly state that defendant was detained at the scene before he was arrested.

¶ 37    Defendant was detained at the scene initially because yet-to-be-identified people were stating that he was the shooter. This was the appropriate action under the circumstances supported by reasonable suspicion. No reasonably prudent officer would ignore this information. Rather, the appropriate course of action was to detain defendant to investigate further.

¶ 38    Probable cause for arrest exists when facts known to an officer would lead a reasonably cautious person to believe the arrestee committed a crime. *People v. Wear*, 229 Ill. 2d 545, 563-64 (2008). Probable cause can be based on information provided by a third party, anonymous or identified, as long as it bears some indicia of reliability. *People v. Adams*, 131 Ill. 2d 387, 397 (1989). "Where officers are working together in investigating a crime, the knowledge of each constitutes the knowledge of all, and probable cause can be established from all the information collectively received by the officers." *People v. Ortiz*, 355 Ill. App. 3d 1056, 1065 (2005).

¶ 39    Defendant's subsequent arrest after a relatively brief detention was the result of a budding investigation that pointed to him as the culprit. Dandridge's testimony contains the following relevant inquiry by the State:

> "MR. KNICK [assistant State's Attorney]: That day did you talk to the police at both the scene, at the Fairmont housing unit, and also at the Joliet police station?
>
> MS. DANDRIDGE [witness]: Yes.
>
> MR. KNICK: And when you talked–were talking to the police there at the scene, what was going on?
>
> MS. DANDRIDGE: Everybody was outside just looking at everything that was going on."

Dandridge went on to say that she told the officer she was not comfortable speaking with the police at her home, and that the officer she spoke with suggested she speak to police later, at the station. Defense counsel on appeal emphasizes the latter portion of Dandridge's testimony, implying she said nothing of substance to officers on scene. This assumption, however, is contradicted by the record.

¶ 40    Detective Jackson responded promptly to the scene and immediately began interviewing witnesses. In describing his second interview with a witness, Detective Jackson documented the following in a report:

> "I traveled to 1514 Fairmount where Tonya Dandridge *** stated that shooter in the above mentioned matter was a subject known to her as 'Choke'. It should be known that I have prior knowledge of 'Choke' being Corrie Wallace. At the time I obtained this information from Tonya Dandridge there were several onlookers in the Fairmount Housing Projects. Ms. Dandridge stated that she would feel more comfortable coming to the Joliet Police Department giving this statement without so many onlookers and people observing the statement of her speaking with the police. I furnished Ms.

Dandridge with my business card and stated when her children arrived home from school that it would be okay to [*sic*] the Joliet Police Department."

Hence, the police had probable cause to arrest defendant after they spoke with Dandridge, an eyewitness to the shooting, on scene.

¶ 41　　Given the record before this court, it is apparent that defense counsel's efforts at trial to quash defendant's arrest would have been futile. The testimony of the witnesses at trial, supplemented by police reports from investigating officers, establish that the police had probable cause to arrest defendant before transporting him to the station. Had defense counsel filed a motion to quash defendant's arrest, it would have been denied. Defendant's detention on scene in the aftermath of a shooting for approximately 45 minutes was reasonable. His eventual arrest was supported by probable cause. Trial counsel's subsequent decision not to file a motion to quash defendant's arrest was objectively reasonable as well. Likewise, appellant counsel was not deficient for failing to raise the same issue on direct appeal. As a result, defendant's ineffective assistance of counsel claim fails the first prong of the *Strickland* analysis.

¶ 42　　Accordingly, we affirm the trial court's summary dismissal of defendant's postconviction petition.

¶ 43　　　　　　　　　　　　　　　　　CONCLUSION

¶ 44　　For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 45　　Affirmed.